3-17-07-80 People of the State of Illinois, Appley v. Robert Goldsmith Appellant. Ms. Brandon? Yes. Good morning, your honors, and may it please the court. My name is Emily Brandon and I am an assistant appellate defender representing Robert Goldsmith. Because this case involves some overlap with another case in which Mr. Goldsmith was charged, before I jump into my arguments, I just want to briefly lay out the timeline in order to put this case into context. In October of 2012, Mr. Goldsmith was charged with soliciting Brian McDaniel to kill Goldsmith's ex-wife, Vicki. At that time, Mr. Goldsmith and McDaniel were both inmates at the Will County Jail, and Goldsmith was awaiting trial on aggravated domestic battery charges, and Vicki was the complainant in that case. Mr. Goldsmith has, from the very beginning, consistently and vociferously maintained his innocence in the solicitation case, and contended that McDaniel framed him by fabricating a conversation on a wire recording. In July of 2015, Goldsmith filed a motion to dismiss the indictment in the solicitation case, arguing that the indictment was based on McDaniel's perjured testimony and thus obtained in violation of due process. That motion outlined Goldsmith's working theory as to how McDaniel framed him. On September 11, 2015, Prosecutor Adam Capelli argued that, quote, short of maybe some type of affidavit from someone admitting perjury, Goldsmith could not prove the indictment had been obtained in violation of due process. Three days later, on September 14, 2015, Goldsmith sent his friend, Julio Centino, an affidavit which mirrored the motion to dismiss the indictment and included statements that McDaniel had fabricated the wire recording, committed perjury, and committed perjury before the grand jury. The affidavit also outlined the benefits McDaniel had received from the state in return for his assistance. Three days after that, on September 17, 2015, Judge Rozak denied Goldsmith's motion to dismiss the indictment. During a phone call with Centino that same evening, Goldsmith remarked, quote, you listen to the recording, you know it's bogus. Thereafter, in October and November of 2015, Centino was in contact with McDaniel with the ultimate goal of getting McDaniel to sign the affidavit and admit that he framed Goldsmith in the solicitation case. And it was this contact that provided the basis for the charges in this case. Which brings me to my first argument, which is that the state offered no evidence that Mr. Goldsmith didn't speak to McDaniel, and no reasonable juror could have found beyond a reasonable doubt that Mr. Goldsmith offered him money. In its brief, the state argues it presented evidence that Mr. Goldsmith acted through his agent, Centino. This is irrelevant. The jury was never instructed on accountability, and the state cannot claim accomplice liability where it did hold itself to the burden of proving legal accountability. And the state proceeded with this theory likely because it couldn't meet the burden to prove legal accountability, which applies, as your honors know, only to criminal acts. The actions here were not criminal. The goal was to encourage Mr. McDaniel to tell the truth and admit that he framed Mr. Goldsmith. And this is abundantly clear based on the timeline and the context in this case. Mr. Goldsmith was following Capelli's instructions to get McDaniel to admit to perjury so that he wasn't forced to stand trial for a crime he did not commit. It's also clear from the state's own evidence that this was the case. For example, People's Exhibit No. 4B, which was the letter from Mr. Goldsmith to Centino, which included the line, tell him he's better off telling the truth and joining our side, him being McDaniel, of course. On a phone call between Mr. Goldsmith and Mr. Centino on September 17th, which was entered as People's Exhibit 7, Mr. Goldsmith tells Mr. Centino again, you listen to the recording, you know it's bogus. On that same call, Centino remarked that he was, you know, going to tell Mr. McDaniel, why don't you just be honest about what happened here? In the phone call from September 24th between Mr. Goldsmith and Mr. Centino, which was entered as People's Exhibit No. 8, Mr. Goldsmith remarks that he was framed. These are calls that the state argued at trial were quote-unquote true calls, because Mr. Goldsmith and Centino didn't think that they would be ever be heard. And so following the state's own logic, these calls reliably demonstrate that Mr. Goldsmith's intent was to get McDaniel to tell the truth. Further, the state presented no evidence that the affidavit itself was untrue, and we know that at the very least, part of it was demonstrably and verifiably true. But the state lied to the jury about that during closing arguments, which brings me to my next argument. The affidavit contained a list of benefits that Mr. McDaniel had received from the state, and that list came from discovery turned over in the solicitation case, and included one of the things Mr. McDaniel was given was $100 in commissary funds. Mr. McDaniel admitted under oath at the solicitation trial that he received the things that the affidavit said he had received, but denied that he had received those things on the call to Centino. Specifically, he denied receiving the $100 in commissary funds. Now, the state chose not to Mr. McDaniel as a witness, but then argued to the jury in closing that McDaniel's denial on the call was substantive evidence that the affidavit was untrue. The state knew Mr. McDaniel's denial on the call was a lie. The state knew that Mr. McDaniel had been offered or given precisely what the affidavit alleged, and not only lied to the jury about that fact, but actively hid the to testify. This was fundamentally unfair. Prosecutors have wide latitude during closings that that latitude does not include lying and misrepresenting known facts. The prosecutors here put their thumbs on the scales of justice, not only with the closing argument, but also in telling Mr. Goldsmith about the 2010 aggravated domestic battery charges. The record makes clear that Mr. Capelli wanted the domestic battery charges before the jury because it indicated that Mr. Goldsmith had a propensity for violence towards Vicki, and would make the jury more likely to believe that Mr. Goldsmith tried to hire McDaniel to kill her. Alerting the jury to the 2010 charges was the state's way of neutralizing Mr. Goldsmith's defense, and it primed the jurors to disbelieve that McDaniel had framed him. And for that reason, it was not and cannot be harmless error to have admitted it. Finally, the state concedes that defense counsel's performance, specifically his failure to redact the phone calls between Mr. McDaniel and Mr. Centino, and failure to object to People's Exhibit No. 6 was objectively unreasonable, but contends that Mr. Goldsmith was not prejudiced. The state doesn't challenge that McDaniel's statements in the phone call violated Mr. Goldsmith's right to confrontation, and to say that these statements didn't prejudice Mr. Goldsmith defies reason. Again, the state used Mr. McDaniel's denial in the phone call that he had received with the affidavit alleged as substantive evidence here that Goldsmith tried to get McDaniel to lie. Mr. Goldsmith was absolutely prejudiced because if those calls had not been admitted or had been redacted, the state wouldn't have been able to do that. The jury could not have found guilt here without believing on some level that Mr. Goldsmith solicited McDaniel, and that is what this evidence allowed. It allowed McDaniel's statements to be before the jury unchallenged, and that absolutely never should have happened. And with that, for these reasons, as well as the additional arguments contained in the briefs, Mr. Goldsmith and I would ask this court to reverse outright or in the alternative, remand for further proceedings. Any questions? No. Okay. Thank you, Brandon. Mr. Nicolosi. Good morning, your honors. May it please the court and counsel. My name is Justin Nicolosi. I represent the state of Illinois in this matter, the appellee. The state submits that the evidence presented at trial was sufficient to prove the defendant guilty of communicating with a witness beyond a reasonable doubt. The state stresses that the jury was the trier of fact in this case. This is not a retrial. The state submits that the evidence was sufficient for any rational jury to find him guilty. Starting with the language of the charge itself, the state submits it's a reasonable reading of the statute, section 32-4B, to have charged the defendant as the state did in this case, given the evidence presented. The state submits it's a fair reading of the statute to incorporate the directly or indirectly language to all of the different ways of committing this offense. Those three ways are communicating false info, threats, or pertinent to this case, the offer or delivery of money. The state submits that it would be unreasonable to read the statute in any other way, because if a defendant did what the defendant did in this case, have a intermediary provide the money to somebody else in order to influence that person's testimony, if this court holds that that's not a way to satisfy the statute, the people would say that would be absurd. That should be a criminal action under this statute, and that's a very fair reading of the statute. Moving on. We'll see if the state had information that at least some of it was true, is there some obligation to hold your fire? Well, some of what? Some of the the affidavit that was written? Yeah. Well, your argument is that it was all false, but if the state had information that at least some of it was true, isn't that, I mean, the state's attorney has an obligation under the code of professional conduct, not just to win cases, but to do justice, to prosecute the right people. Isn't there some obligation here on the part of the state's attorney? Of course, there's always an obligation on the part of the state's attorney to do those things that you just alluded to, but the state submits that in this case, that the affidavit on the whole was not true, that this was not a true statement of Brian McDaniel, and that's not what happened in this case. The state submits that there are statements within the phone calls and the other and Brian McDaniel. I'm sorry, did he receive the things that were recited in the affidavit? Yes, yes, but going to counsel's argument about the prosecutor's closing argument, the state believes that statement was misconstrued, that the prosecutor was really more talking about the overall theme of the defendant's truth, Mr. Goldsmith's truth, as opposed to the actual truth, and that was more of a slip of the tongue. That's not what the prosecutor meant. That's what the state's position is, that based on the fact that the affidavit wasn't true, based on the statements that were made in the phone calls, that again, I will get to soon, that point to the fact that this affidavit was not true, that's what the prosecutor was talking about. So whether or not McDaniel received those things, and he did, I don't think there's any question about that at this point. I don't believe that should give the prosecutor some obligation not to proceed with this case in the manner in which it did, because again, the pertinent part of this affidavit that the defendant was trying to get McDaniel assigned was that McDaniel faked that conversation. He had the role play conversation by himself, and that it was scripted by detectives, by multiple detectives. The state submits that as the most important part of this affidavit, and that part of it is untrue. And again, if I could go to the statements made in the calls that the state believes, point to the fact that this is not true, that the jury heard, obviously the jury believed in the state's case. One of those such statements was made to Julio Centino, by Julio Centino talking to the defendant. He said, number one, he said, this is a beautiful affidavit. And then he said, well, I shouldn't have said that, but nobody's listening. The state submits, why would anybody say that if this was a true document? That doesn't make any sense. And again, the jury- So the state's attorney can have a slip of the tongue, but the defendant cannot? Well, it wasn't really a slip of the tongue, but he acknowledged that he shouldn't have said it, but why shouldn't he have said that if this was a true document? Moving on, Centino also said that he was talking to the defendant. He said, well, McDaniel could say, this ain't true, this ain't true, this ain't true, talking to different items in the affidavit. And then the defendant responded, if he signs it, that's all that matters. Again, why would he say that if this was a true document? The right answer, if this is a true document was, no, it's all true, Ed, he called Centino Ed. This is all true. So why would he say this ain't true if it's all true? That was the right answer. And a reasonable jury, any rational jury would see, he never said that this is a true- The right response there was, this is all true. He can't say, this is all true. That's the only possible right response? No, but it's a rational one. And it's a reasonable, it's reasonable to expect that. The defendant's response doesn't exactly correspond to the theory that this is a true document. He says, if he signs it, that's all that matters. That's what the prosecutor was alluding to when he's talking about the defendant's truth, because the defendant knows that if McDaniel signs this document, that becomes the truth. So it doesn't matter what's in there. It becomes true. And it doesn't matter that that's what McDaniel actually, what actually happened. It doesn't matter what, if that's what McDaniel believed, it becomes true if McDaniel signs it. That's what the prosecutor was talking about. That's what the defendant clearly, that's the main goal here, is to get, to have Centino get McDaniel to sign that document. The state, some of those statements point to the fact that this is true. The state also points to Centino's credibility issues. He was the only one who testified. He said things like that the defendant didn't have him try to get McDaniel to sign the document. Well, all the physical evidence in this case points to that as absolutely not being true. The defendant clearly solicited Centino to try and get McDaniel to sign this document. Centino also stated that he was not forthright when asked if that the Western Union document that was found in Centino's home, evincing that he had wired McDaniel money, he said that could have been from him. But again, the evidence is clear. On the phone call, Centino confirmed to the defendant that he sent that money. So I don't know why he's being, he was being cagey and not forthright. And obviously the jury saw that too and believed his testimony wasn't 100% honest. So the jury clearly heard those things. And the state submitted the evidence that was presented was sufficient to support the jury's verdict. I'd like to ask you another question about the jury heard those statements. Sure. The state asked to have admitted evidence that Mr. Goldsmith had been charged with these two offenses aggravated battery and solicitation of murder. And he had not been convicted of those. Is that correct? I think that is correct. I believe that is correct. I'm sorry. What is that the basis for the state's concession of error? Are you saying I can, I'm confused. I'm confused. That's your question, your honor. I'm sorry. Did the state concede error in that on that issue? Um, I don't, are we talking just for admission of, of the evidence of other crimes in this case? Yes. I don't, I don't believe I confessed error to that. Um, oh, you did. Boy, yeah, that was, that was a question I was not prepared for. Um, I'm sorry. I thought my brief said that you did concede error on that, but claimed it was harmless. No, I definitely can, uh, contended it was harmless. I didn't confess error. Um, I basically reiterated what the prosecutor's argument was below, um, regarding the invested, the, the aggravated domestic battery charge. Uh, he argued that, um, it was inextricably linked to the, um, the current case. And that's why, uh, it should have been, um, uh, admitted as, as other crimes evidence in this case, I definitely focused the majority of my argument because the, the solicitation, uh, issue, I, even the defendant admitted that was relevant and that was admissible. So that's why that came in. Okay. Apparently misread this wrong. Cause my notes say that the state conceded error on that. No. And I think on that issue, um, I don't believe the admission of the aggravated domestic battery charge was, um, prejudicial. I think it absolutely was harmless because again, defendant admitted that it was proper for the solicitation, um, to, to commit murder for hire was a proper other evidence. And that the aggravated domestic battery charge paled in comparison to the, the weight of a solicitation charge in the minds of a jury. So that other crimes be convicted crimes. I don't believe that that was an issue that has been raised. Uh, your honor. I don't, I don't think that was not an issue that was, um, I, um, uh, okay. That's been, um, thank you. So, and I don't believe so. I believe it was, yeah. Um, anyway, no moving on. Um, uh, yeah. And I guess, uh, moving on to the, uh, the, the, the ineffective assistance, uh, when I can go there, we're going to go with the prosecutor's closing argument that was already, um, alluded to by, by council. I guess I already kind of discussed, um, my position on that. Uh, I believe that was, um, that the prosecutor misspeaking about Mr. Goldsmith and what, or I'm sorry, Mr. McDaniel and what he had received, um, in order to, to be able to wear the wire, um, which preceded the solicitation case. Um, I think the, the jury again, heard the evidence. Uh, I think they, they knew that Mr. Goldsmith had, uh, had accepted those items, uh, as a benefit for doing that for the state. And, uh, again, the prosecutor's, uh, overriding theme of that, uh, as I discussed in more detail in my brief was that he was talking about the, the Mr. McDaniel or Mr. Goldsmith's truth, as opposed to the actual truth. And that's the kind of the theme of the prosecutor's case. Um, that once Mr. Goldsmith gotten Daniel to sign that document, which obviously he didn't do, that would become the truth. That's what the prosecutor was, was referring to. And, and the, the, the comment saying that McDaniel did not receive those things that was, um, just an isolated comment and that wasn't, uh, um, significant and the context of the prosecutor's, uh, closing argument as a whole. Um, so with that, the state would, uh, would urge this court to affirm the defendant's conviction and sentence. Uh, if there are any other questions, I'd be happy to answer them. No, I would like to apologize again for injecting confusion. Um, I just misread that in the brief. That's quite all right. Uh, no, no problem at all. I, I certainly sometimes as this court knows, I get confused and, uh, um, misspeak as well. So that happens. I mean, you're all of us through Mr. McDaniel. Thank you. I have to say about myself, but it's true. So is Brandon. Yes. Um, a couple of things. So the state's reading of the statute is not a fair or reasonable one. Um, first of all, uh, as argued in my briefs, there are three actus reus elements for this, um, for this crime in the all three of these actus reus elements that the statute would be written differently. Um, that language could have come at the beginning, um, of the statute before any of the actus reus elements were laid out. Um, further, the state always has, um, has accountability. If a defendant acts through an intermediary, um, and an innocent agent is a theory of accountability. And again, what the state wanted to have it both ways, they couldn't prove their theory was that, um, Mr. Goldsmith and Mr. Centino acted in concert, acted together. So the innocent agent theory of accountability was out the window, but the state also didn't hold themselves to the burden of proving actual legal accountability. The jury was never instructed on it. The jury got instructions that said, you know, miss, they had to find that Mr. Goldsmith offered McDaniel money uncontested that they never were in contact uncontested. Um, further the state five times in its brief. And again, here truncates the quote, um, in the phone call between Mr. Goldsmith and Mr. Centino about, Oh, it's the beautiful affidavit. And the part that they again, it makes it clear that the intent here was to get Mr. McDaniel to tell the truth because the, the part that the state cut off again, five times in its brief. And again, here says if, uh, Mr. Goldsmith responded, if he signs it and details his whole plot, okay. Contrary to what the state believes the most important part of the affidavit was not how the, uh, the intricacies of how Mr. McDaniel accomplished this fabrication. That doesn't matter. What matters is that McDaniel admitted that he fabricated it and that he lied to the grand jury. And again, that is very clear when given the context of this case and the timing, um, further in regards to the closing argument, the state's argument, again, the state implied that Mr. Goldsmith's truth was not the actual truth. And that is exactly what the prosecutor told the jury during closing argument. And as an example, she used, let me just ask that. So what the prosecutor was telling the jury was that this is not the truth. That was the theory of the state's case. What was wrong with arguing that to the jury? Nothing except that they didn't present any evidence to demonstrate that it wasn't true except for Mr. Mc, except for the phone calls between Mr. McDaniel and Mr. Centino. And again, the state was arguing that the evidence on that phone call, Mr. McDaniel's denial that he ever received a hundred dollars in commissary was evidence that the affidavit was untrue. And again, the state knew that Mr. McDaniel's phone call or denial on the phone call was a lie. And if your honors have no more questions, um, again, we would ask that, uh, your honors reverse Mr. Goldsmith's conviction outright or in the alternative remand for further proceedings. Uh, thank you again, Ms. Brandon and Mr. Michelosi. I appreciate your argument today. We will take this matter under advisement, get back to you in the written disposition within a short day. I'm not taking short recess until I believe 12 o'clock.